IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00124-CR

 

Kenneth Richards,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 278th District
Court

Walker County, Texas

Trial Court No. 23483

 



MEMORANDUM  Opinion



 

A jury found appellant, Kenneth Richards,
guilty of the offense of possession of a cellular telephone while an inmate of
a correctional facility.  After finding true the allegation in
the enhancement paragraph that Richards had prior felony convictions, the jury
assessed his punishment at confinement for twenty-five years.  In five issues, Richards
contends that the trial court erred in admitting his statements into evidence
and failing to instruct the jury on accomplice-witness testimony.  He also
challenges the effectiveness of his counsel’s assistance at trial, the
constitutionality of Penal Code section 38.11(j), and whether his sentence
constitutes cruel and unusual punishment.  We will affirm.  








Background

On September 26, 2006, Richards was
indicted for possession of a cell phone while in a correctional facility. 
Cathy Harvey, Richard’s ex-wife testified that she periodically visited him at
the Ellis Unit of the Texas Department of Criminal Justice (TDCJ) where he was
confined.  In November of 2005, Richards asked Harvey to obtain a cell phone
for him.  She bought one with pre-paid minutes and at his request placed it
under a sign on a road located about ten miles from the prison.  She visited
him on   November 27, 2005, and told him that she had done what he asked, and
he later told her that he had received the phone.

Robert Hickman, who was also confined at
Ellis Unit in 2005, testified that Richards offered him $100 to deliver
packages of tobacco to another inmate.  Hickman agreed to do so if he could use
Richards’s cell phone.  Richards gave the cell phone to Hickman, but Richards
was arrested for possessing tobacco before he could give the tobacco to Hickman
for delivery.  Hickman later used the cell phone and hid it after Richards was
arrested.

John Riggle, an investigator with TDCJ,
testified that he tried to interview Richards about the tobacco before his
arrest.  Instead, Richards asked to speak with Eddie Howell, a major at the
Ellis Unit.  Howell testified that Richards said that his wife dropped off a
bag containing a cell phone and that Hickman hid it in the maintenance yard.  Howell
did not give Richards Miranda
warnings or advise of him of his statutory rights under Article 38.22, Section
2(a) of the Texas Code of Criminal Procedure before he spoke to him.  Howell
also failed to record the conversation.  After speaking with Richards, Howell recovered
the cell phone from Hickman.

Although Richards did not file a motion
to suppress statements obtained in violation of Miranda and article
38.22 at trial, when the State offered the statements through the testimony of
Riggle and Howell, Richards objected and a brief hearing was conducted outside
the presence of the jury.  The trial court overruled the objection and admitted
the statements.

Admission of Evidence

Richards contends in his first issue
that the court erred by admitting into evidence the statements he gave to
Howell.  He argues that his statements were the result of an unwarned custodial
interrogation, were not recorded, and were involuntary because Howell promised
to restore Richard’s status as a prison trustee in exchange for information.  The State acknowledges that Richards did
not receive Miranda warnings prior to making the challenged statements
to Howell, but it argues that the evidence was correctly admitted by the
trial court because the statements were not the product of “custodial
interrogation.”

We review a trial court's admission or
exclusion of evidence for an abuse of discretion.  McDonald v. State,
179 S.W.3d 571, 576 (Tex. Crim. App. 2005).  “A trial court abuses its
discretion when its decision is so clearly wrong as to lie outside that zone
within which reasonable persons might disagree.”  Id.  The voluntariness of a statement given
to law enforcement is determined from the totality of the circumstances.  Wyatt
v. State, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000); Kearney v. State,
181 S.W.3d 438, 444 (Tex. App.—Waco 2005, pet. ref’d).

            The court conducted a
hearing, outside of the presence of the jury, to determine whether the
statements Richards made to Howell were admissible.  Investigator Riggle
testified that, after he summoned Richards from his cell, he introduced himself
and told Richards that he was investigating an allegation that tobacco had been
brought into the Ellis Unit.  Richards then immediately said that he wanted to
talk to Howell before talking to Riggle, and Richards was escorted out of his
office.

            Howell testified that
Richards asked if he could meet with him.  According to Howell, although he
agreed to meet with Richards, he never requested an interview with him.  After
Richards was escorted to his office, Howell asked Richards “You wanted to talk
to me.  What is on your mind?”  Richards then told Howell the details about his
wife’s purchasing the cell phone and his offering it to Hickman in exchange for
delivery of the tobacco.

Richards testified that when he went to
meet with Riggle, Riggle told him that he already had a statement from Richards’s
ex-wife and that if he did not cooperate, Riggle would see to it that he served
every day of his ten-year sentence.  According to Richards, it was then that he
requested to speak with Howell.  He specifically wanted to speak with Howell
because in a prior incident where Richards was charged with possession of
tobacco, Howell had made the case “go away” after he cooperated and gave
information.  He said that on the instant occasion Howell told him he needed to
know what was going on in his unit.  According to Richards, he asked Howell to
help him out like he did before, and Howell told him that he would have to give
really good information first.  As he began to discuss small details, Howell repeatedly
told him that the information was not enough and that he needed to give additional
information.  Richards eventually told him everything.  Richards also testified
that Howell offered to help him keep his trustee status if Richards helped him
find the cell phone.

According to Howell, he never promised Richards anything in
exchange for his information.  Howell testified as follows,

[Q]:     And during this conversation did you
promise Kenneth Richards anything?

[A]:      No, I did not. 

 

[Q]:     Did you tell him that anything bad would happen to him
if he did not tell you the full story?

[A]:      No, I mean he was already found in possession of the
tobacco by the farm manager.  Disciplinary was already generated.  I wasn’t
involved in that process at all.  And he was going to be disciplined by agency
rules for his misconduct for possession of the tobacco. 

 

[Q]:     And during the conversation did you ever subject him to
any type of coercion that would cause him to give you statements? 

[A]:      It was probably his expectation that there would be
leniency in the disciplinary punishment for his disciplinary offense for the
possession of the tobacco.  But I never promised him that.  Because, you know,
he basically was caught red handed, and that wasn’t his first time to be found
in possession of contraband.  

 

[Q]:     And let me ask you specifically, if you didn’t ask
him—I will use legal phrases.  Did you subject him to any express questioning
other than what he told you? 

[A]:      No.  You know, he came into the office and I asked
him, you know, Mr. Riggle said you wanted to talk to me and what is on your
mind.  

 

[Q]:     And did you do anything that would indicate that you
were going to help him out? 

[A]:      No. 

[Q]:     Anything that he might have taken from you as being
okay, he has now told me, I’m going to get a benefit? I’m going to give it all
up? 

[A]:      No, No.  I didn’t do any of that.  

 

Article
38.22 generally precludes the use of a defendant’s statements that result from
custodial interrogation absent compliance with its procedural safeguards.  See
Tex. Code Crim. Proc. Ann. art.
38.22 (Vernon 2005).  But it does not preclude admission of statements that do
not stem from custodial interrogation.  See id.  Thus, if Richards’s
statements did not stem from custodial interrogation, article 38.22 does not
require their exclusion.  See Morris v. State, 897 S.W.2d 528,
531 (Tex. App.—El Paso 1995, no pet.).

In this case, there is no dispute that
Richards’s unrecorded oral statements were made while he was in custody; the
only disputed issue is whether there was an "interrogation." 
"Interrogation 'refers not only to express questioning, but also to any
words or actions on the part of the police (other than those normally attendant
to arrest or custody) that the police should know are reasonably likely to
elicit an incriminating response from the suspect.'"  Miffleton v.
State, 777 S.W.2d 76, 81-82 (Tex. Crim. App. 1989) (citing Rhode Island
v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980)). 
When the officer's statements are designed to elicit incriminating statements
from the defendant, it is interrogation.  Id. at 82.  Statements
that the accused volunteers are admissible.  Miranda v. Arizona, 384
U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966); Jefferson v.
State, 974 S.W.2d 887, 890 (Tex. App.—Austin 1998, no pet.).

Thus, not all
custodial questioning can be classified as "interrogation."  Jones
v. State, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990).  Courts have held a
variety of questioning to be outside the constitutional definition of
"interrogation."  Id.  In Jones, the Court of Criminal
Appeals gave some examples where certain questioning by police officers has not
constituted "interrogation":

For example, routine inquiries,
questions incident to booking, broad general questions such as "what
happened," and questions mandated by public safety concerns e.g.
"where did you hide the weapon" when the weapon has just been hidden
in the immediate vicinity. See generally Ringel, Searches And
Seizures, Arrests And Confessions, § 27.4 (Clark Boardman Company, Ltd.
1987).  In Texas…courts have held several police questions
to be non-interrogative.
 Massie v. State, 744 S.W.2d 314 (Tex. App.—Dallas 1988, pet. ref'd.)
("Where are you going?" to a DWI suspect stopped on the street); DeLeon
v. State, 758 S.W.2d 621 (Tex. App.—Houston [14th Dist.] 1988, no pet.)
(asking a suspect where the murder weapon was). But see Sims v. State,
735 S.W.2d 913 (Tex. App.—Dallas 1987, pet. ref'd.) (holding that questions
regarding when a defendant last ate, and asking what day, date and time it was
did amount to interrogation).

 

Id. at 174 n.3.

 

Howell testified that after officers
found a large quantity of tobacco at the Ellis Unit, he contacted Riggle’s
office so that they could investigate.  He knew that Riggle was interviewing
Richards on questions of tobacco possession, but he did not know any other
details surrounding the case.  Both Howell and Riggle testified that Richards
asked to meet with Howell after he was brought in to speak with Riggle. 
According to Howell, when Richards arrived to meet with him, Howell asked him
“what’s on your mind?”  Richards then began to explain how his wife had delivered
tobacco and a cell phone.

We conclude that the trial court
was justified in finding that Richards's oral statements were not the product
of custodial interrogation, but were spontaneous and voluntary and thus
admissible under section 5 of article 38.22.  Tex.
Code Crim. Proc. Ann. art. 38.22, § 5; Dossett v. State, 216
S.W.3d 7, 24 (Tex. App.—San Antonio 2006, pet. ref’d).  Even though Richards
was in custody, the evidence at trial showed that he made voluntary statements after
asking to meet with Howell.

Richards’s testimony conflicted with
Howell’s when Richards claimed that Howell asked to meet with him (and not vice
versa); however, the trial court was entitled to believe the officer’s version
of the facts and disbelieve Richards.  There was ample evidence from both
officers that Richards initiated the discussion and was eager to talk about the
cell phone and the tobacco.  Dossett, 216 S.W.3d at 24.  Many cases have
held that such spontaneous, volunteered statements not made in response to interrogation
are admissible, whether or not the defendant is in custody.  See, e.g., Wiley
v. State, 699 S.W.2d 637, 638-39 (Tex. App.—San Antonio 1985, pet. ref'd,
untimely filed) (holding that defendant's statement, "Okay, I did
it," made after being shown bloody clothes and bloody knife, was not in
response to interrogation and was admissible); Smith v. State, 949
S.W.2d 333, 339 (Tex. App.—Tyler 1996, pet. ref'd) (holding captured
defendant's unsolicited statement that it would not take him as long to escape
from prison the next time was admissible); Higgins v. State, 924 S.W.2d
739, 743-45 (Tex. App.—Texarkana 1996, pet. ref'd) (holding defendant's
spontaneous statement that he killed his wife made while in custody and in the
back seat of police car was not the product of police questioning and was
voluntary and admissible); De Leon v. State, 758 S.W.2d 621, 625 (Tex.
App.—Houston [14th Dist.] 1988, no pet.) (defendant was handcuffed and
questioned about a prison stabbing due to a blood stain on his knee; his
statement in response to police questioning about the location of the knives
was suppressed, but his later, spontaneous statement, "I killed him,"
was held voluntary and admissible); Villarreal v. State, No.
04-05-00287-CR, 2005 Tex. App. Lexis 9300, at *4-5 (Tex. App.—San Antonio Nov.
9, 2005, pet. ref'd) (not
designated for publication) 
(holding defendant was in custody, but was not being interrogated at the time
of his spontaneous admission while officer was escorting him to an interview
room that he killed his mother).

Howell’s question to Richards, “what’s
on your mind?” was non-interrogative and more akin to a greeting than a
question reasonably calculated to elicit Richards’s response.  Massie,
744 S.W.2d at 316-17.  Thus, we cannot say that the trial court abused its
discretion in admitting Richards’s statement because it was spontaneous and
voluntary and not the result of interrogative questioning.  Dossett, 216
S.W.3d at 24.  We overrule Richards’s first issue.

Accomplice-Witness Instruction

In his second issue, Richards contends
that Harvey is an accomplice and the court erred by failing to include an
accomplice-witness instruction in the jury charge.  Richards did not request
this instruction at trial or object to its omission from the jury charge.  

A person indicted for the same crime as
the defendant, or a lesser-included offense based on “alleged participation” in
the “greater offense” is an accomplice as a matter of law.  Ex parte Zepeda, 819 S.W.2d 874, 876 (Tex. Crim. App.
1991).  A person who “participates
with the defendant before, during, or after commission of a crime” and may be
prosecuted for the same crime as the defendant is an accomplice as a matter of fact. 
Id at 875-76.  To be an accomplice, one must perform an affirmative act
promoting the crime.  See Paredes v. State, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).  This participation must involve some affirmative act that promoted
the commission of the offense with which the accused is charged.  Bulington
v. State, 179 S.W.3d 223, 229 (Tex. App.—Texarkana 2005, no pet.).  If a
person is an accomplice as a matter of law, the court must so instruct the
jury.  See Paredes, 129 S.W.3d at 536.  If the evidence is conflicting
as to whether a person is an accomplice, the court must submit the issue to the
jury.  See id.[1]

Assuming, without deciding, that
Richards was entitled to an accomplice-witness instruction, we will reverse
only if the unobjected-to error caused “egregious” harm.[2] 
See Herron
v. State,
86 S.W.3d 621, 632 (Tex. Crim. App. 2002).  Omission of an accomplice-witness instruction is
harmless unless “corroborating (non-accomplice) evidence is ‘so unconvincing in
fact as to render the State’s overall case for conviction clearly and
significantly less persuasive.’”  Id.

A defendant cannot be convicted based on
accomplice testimony unless it is corroborated.  See Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); see also Cathey v. State, 992 S.W.2d 460, 462
(Tex. Crim App. 1999).  Corroboration is insufficient
if it “merely shows the commission of the offense,” but is sufficient if
it tends to connect the defendant to the offense.  Tex. Code Crim.
Proc. Ann. art. 38.14.[3] 
Corroborative evidence may be “circumstantial or direct.”  Reed v. State, 744 S.W.2d 112, 126
(Tex. Crim. App. 1988).

The record contains
sufficient corroborative non-accomplice testimony tending to connect Richards
to possession of the cell phone.  Howell testified that Richards told him that
he asked Harvey to purchase the cell phone and deliver it to him.  Richards
also told him that he had given the cell phone to Hickman.  Howell then spoke
to Hickman, who later admitted that he had the cell phone and told Howell where
it was hidden.  Riggle testified that after he was given the cell phone, he
recovered six numbers, three of them associated with Hickman and one made to
Lake Country Inn, the location Harvey testified she called to test the cell
phone.                                                                                                           
                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                  

This non-accomplice
testimony establishes that Richards: (1) was in possession of the cell phone; (2)
was housed in the correctional facility at the time he came into possession of
the cell phone; and (3) gave the cell phone to Hickman so that he could use
it.  Collectively, these factors constitute sufficient corroboration and tend
to connect Richards to the possession; thus, the jury could reasonably conclude from
non-accomplice testimony that Richards possessed the cell phone.  See Hernandez v. State, 939 S.W.2d 173, 178
(Tex. Crim. App. 1997).

Therefore, we do not find the evidence so
weak or unconvincing as to make the State’s case clearly and significantly less
persuasive.  See Herron, 86 S.W.3d at 632.  Because Richards did not suffer
egregious harm, the charge error is harmless.  We
overrule Richards’s second issue.

Effective
Assistance of Counsel

In his third issue, Richards argues that
trial counsel provided ineffective assistance by (1) failing to request an
accomplice-witness instruction; (2) repeatedly mentioning that he invoked his
right to remain silent when talking to officers; and (3) failing to object to Riggle’s
testimony that he believed Harvey was telling the truth.   

The standard in Strickland v.
Washington applies to a claim of ineffective assistance of counsel.  Strickland
v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To
prevail, a defendant must first show that his counsel’s performance was
deficient.  Id. at 687, 104 S.Ct. at 2064; see Mitchell v. State,
68 S.W.3d 640, 642 (Tex. Crim. App. 2002).  Then it must be shown that this
deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

Appellate review of defense counsel’s
representation is highly deferential and presumes that counsel’s actions fell
within the wide range of reasonable and professional assistance.  Mallett v.
State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).

In assessing Richards’s claims, we apply
a strong presumption that trial counsel was competent.  Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  We presume counsel's actions and
decisions were reasonably professional and were motivated by sound trial
strategy.  See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994).  When, as in this case, there is no evidentiary
record developed at a hearing on a motion for new trial, it is extremely
difficult to show that trial counsel's performance was deficient.  See Bone
v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  

Accomplice Witness 

First, Richards argues that his counsel
was ineffective for failing to request an instruction to the jury that Harvey was an accomplice witness.  Because of the nature of the evidence corroborating Harvey’s testimony discussed in Richards’s second issue, we cannot say that but for his
trial counsel's failure to request this instruction, the outcome of the
proceeding would have been different.  Consequently, Richards has failed
to meet the second prong of Strickland.  See Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

Richards’s Right to Remain Silent 

Second, Richards contends that counsel’s
questions on cross-examination that elicited testimony that he refused to talk
to Riggle after being advised of his constitutional rights constituted
deficient performance.  Hall v. State, 161 S.W.3d 142, 154-55 (Tex.
App.—Texarkana 2005, pet. ref’d) (counsel ineffective in failing to object to
prosecutor’s statements and argument regarding defendant’s post-arrest silence);
Brown v. State, 974 S.W.2d 289, 294 (Tex. App.—San Antonio 1998, pet.
ref’d) (counsel ineffective in failing to object to testimony regarding defendant’s
post-arrest silence).

We evaluate counsel's performance while
taking into consideration the totality of representation and the particular
circumstances of this case.  Thompson, 9 S.W.3d at 813; Ex parte
Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991).  There is a strong
presumption that counsel's conduct fell within the wide range of reasonable
professional assistance.  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065;
Tong, 25 S.W.3d at 712.  Therefore, we will not use hindsight to second
guess counsel's trial strategy.  Hall, 161 S.W.3d at 152.

Richards argues that the jury should not
have been told that he invoked his right to remain silent, and the State
agrees.  However, under the facts of this case, proof that Richards invoked his
rights once they were read to him could have supported Richards’s contention
that the confession he made to Howell was involuntary and inadmissible. 
Because “there is at least the possibility that the conduct could have been [a]
legitimate trial strategy, we must deny relief on an ineffective assistance
claim on direct appeal" for this argument.  Murphy v. State, 112
S.W.3d 592, 601 (Tex. Crim. App. 2003).

Truthfulness 

            Counsel elicited on
cross-examination of Riggle that he believed that Harvey was truthful when he
interviewed her.  This, argues Richards, was inadmissible opinion testimony and
counsel’s failure to object fell below the standard of reasonable professional
representation.  Schutz v. State, 957 S.W.2d 52 (Tex. Crim. App. 1997)
(expert testimony that complainant is telling the truth is inadmissible); Miller
v. State, 757 S.W.2d 880, 883 (Tex. App.—Dallas 1988, pet. ref’d).

            Counsel’s questioning of
Riggle was as follows.  

[Richards’s Counsel]: Not in two hours, her being truthful,
her coming forward, answering every question you asked, and in two hours not
once did you ever hear her put that phone in the hands of my client Richards 

[A]: No. 

 

Although it may have been unwise for
Richards’s counsel to elicit inadmissible testimony on truthfulness, analyzing
this claim we cannot say that counsel’s actions were not grounded in sound
trial strategy.  Walker
v. State, 201 S.W.3d
841, 850 (Tex. App.—Waco 2006, pet. ref’d). 
Therefore, Richards has failed to meet the first prong of Strickland on
this argument.  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Walker,
201 S.W.3d at 850.  We overrule Richards’s third issue.

Constitutionality
of Section 38.11(j)

Richards’s fourth issue complains that section
38.11(j) of the Penal Code violates the Equal Protection Clause of the
Fourteenth Amendment.  The
language of section 38.11(j) is as follows: a person commits an offense if the person while an inmate
of a correctional facility operated by or under contract with the Texas
Department of Criminal Justice or while in the custody of a secure correctional
facility or secure detention facility for juveniles possesses a cellular
telephone.  Tex. Pen. Code Ann. §
38.11(j) (Vernon 2008).

When reviewing the constitutionality of
a statute, we presume that the statute is valid and that the legislature did
not act unreasonably or arbitrarily in enacting it.  Rodriguez v. State,
93 S.W.3d 60, 69 (Tex. Crim. App. 2002); see also Tex. Gov’t Code Ann. § 311.021 (Vernon 1998).  The burden is on Richards to prove the statute is unconstitutional.  See
Rodriguez, 93 S.W.3d at 69.  The statute must be upheld if it can be
reasonably construed as constitutional.  Brenneman v. State, 45 S.W.3d
729, 732 (Tex. App.—Corpus Christi 2001, no pet.).

Inmates are not a suspect class and so
their equal protection claims must be reviewed under a rational-basis test.  Garcia
v. Dretke, 388 F.3d 496, 499 (5th Cir. 2004).  So long as the statute
furthers some legitimate state interest, its constitutionality should be
upheld.  Id.  Howell told the jury that he was immediately
worried when he heard there was a cell phone on the unit because of security
concerns.  He testified that “we can’t fulfill our mission to provide safety if
offenders are running around with cell phones.”  Similarly, Riggle testified
that the cell phone case was a top priority because the prison is always
concerned about escape plans made using cell phones.  Maintaining security in
prisons is arguably a legitimate state interest and therefore we find no merit
in Richards’s claim of an Equal Protection Clause violation.  We overrule his
fourth issue.

Cruel and
Unusual Punishment

Richards’s final issue addresses whether
his sentence amounts to cruel and unusual punishment.[4] 
When the trial court sentenced Richards to twenty-five years in prison, he did
not object on grounds of cruel and unusual punishment.  See Steadman v.
State, 160 S.W.3d 582, 586 (Tex. App.—Waco 2005, pet. ref’d) (claim that
sentence constituted cruel and unusual punishment not preserved absent an
objection at trial).  Because this issue is not preserved, we overrule it.




Conclusion

Having overruled all of Richards's
issues, we affirm the trial court's judgment.  

 

 

BILL VANCE

Justice

 

Before Chief
Justice Gray,

            Justice
Vance, and

            Justice
Reyna

            (Chief
Justice Gray concurs in the judgment with a note)*

Affirmed 

Opinion delivered
and filed December 31, 2008

Do
not publish

[CRPM]

 

*(Chief
Justice Gray concurs in the Court’s judgment to the extent it affirms the trial court’s judgment.  A
separate opinion will not issue.  He notes, however, that it is not undisputed,
as stated by the Court, that Richards was in custody.  The question of what
constitutes custody for purposes of custodial interrogation is not so clear cut
when the person is already in prison.  In this instance the question of custody
is not necessary to resolve because the Court determines there was no
interrogation.  For this reason the conclusory statements that Richards was in
custody are irrelevant to the disposition of this appeal.  As such they are
dicta and should be removed from the opinion.)

 









[1]               If a person is not an
accomplice, “no charge need be given to the jury either that the witness is an
accomplice witness as a matter of law or in the form of a fact issue whether
the witness is an accomplice witness.”  Gamez v. State,
737 S.W.2d 315, 322 (Tex. Crim. App. 1987).

 





[2]               Because Richards failed
to object to the court’s omission, he must prove that the error caused him
egregious harm.

 





[3]               It is not necessary that
corroborative evidence establish the defendant’s guilt or “directly connect the
defendant to the crime.”  Cathey
v. State, 992 S.W.2d
460, 462 (Tex. Crim App. 1999).





[4]   Because Richards had four prior
felony convictions, his sentence of twenty-five years was the minimum
prescribed for his status and violation.